IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBIN TIMOTHY ALBEE, | ) | Case No. 05-20819-7 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| ROBIN TIMOTHY ALBEE, | ) | Adversary No. 05-2042 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

Robin Timothy Albee ("Debtor") filed a complaint seeking a determination that his student loan debt should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(8) on the ground that repayment of such debt would impose upon him an undue hardship, which allegations defendant U.S. Department of Education ("Defendant") denied.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1).  The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Debtor's student loan debt is dischargeable pursuant to § 523(a)(8).

I.  FACTUAL BACKGROUND

Debtor received a bachelor degree in history in 1987 from Boise State University.  He funded a

portion of his education with student loans of which he has paid back the majority.  Debtor worked for

several years in various jobs until returning to graduate school.  In 1997, he was graduated from the

University of Missouri with a masters degree in rural/environmental sociology.  Debtor testified that

while attending graduate school he developed several medical problems including a cornea infection,

knee problems and a hand problem which made it difficult to write.[1]   From 1997, Debtor has been

treated for idiopathic polyarthritis which at times has been disabling.[2]  Debtor testified that his medical

conditions caused him to be unable to pursue a career that he had planned in overseas development

because he had difficulty walking and wanted a job that would provide a medical plan.

Debtor borrowed approximately $70,000 in student loans while in graduate school.  On March

7, 1999, the student loans first became due.  Debtor has paid approximately $7,657.60 towards the

loans, mainly through garnishment of his wages.  As of September 9, 2005, Debtor was indebted to

Defendant in the amount of $97,167.53, with 5.30% interest accruing thereafter.  Debtor's repayment

of his loan under the Income Contingent Repayment Plan (ICRP) would initially be $470.50 per month

for 219 months, which would subsequently be adjusted annually based on Debtor's income.  Debtor

would also have the option of repaying the loan under a standard, extended or graduated repayment

plan.  The initial payments under those repayment plans would be $1,044.91, $539.57 or $522.46,

respectively[3].

Debtor is 42 years old, single, and has no children.  Debtor has been employed by the

---

[1]Plaintiff's Exs. 5, 7 & 8.

[2]Plaintiff's Ex. 6.

[3]Plaintiff's Ex. 2, p. 4.

University of Missouri as a research coordinator for three years and has received an average gross

annual income of $38,500, including approximately $41,000 earned in 2005 due to receiving $3,500

under an incentive plan.[4]  Debtor testified that he is not guaranteed to receive that bonus and that it

would not normally be that large.

## II.  DISCUSSION

### A.  Undue Hardship

Debtor contends that it would be an undue hardship for him to repay the remaining amount due

on his student loan.  Under § 523(a)(8), certain student loans are nondischargeable unless repayment of

the loan would impose an undue hardship on the debtor or his dependents.  The burden of establishing

undue hardship, by a preponderance of the evidence, is on the debtor.  *Andrews v. South Dakota*

*Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981); *Ford v.*

*Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir.

2001).  Unfortunately, the Code contains no definition of the phrase "undue hardship" and

interpretation of the concept has been left to the courts.  In this Circuit, the applicable standard is the

"totality of the circumstances" test.  *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549,

554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704; *see also, Fahrer v. Sallie Mae Servicing Corp. (In*

*re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004).

In applying this approach, the courts are to consider: (1) the debtor's past, current and

reasonably reliable future financial resources; (2) the reasonable necessary living expenses of the debtor

---

[4]Plaintiff's Ex. 1.

and the debtor's dependents; and (3) other relevant facts and circumstances unique to the particular

case. *Long*, 322 F.3d at 544; *Ford*, 269 B.R. at 676. The principal inquiry is to determine whether

"the debtor's reasonable future financial resources will sufficiently cover payment of the student loan

debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be

discharged. *Long*, 322 F.3d at 554. The Court must determine "whether there would be anything left

from the debtor's estimated future income to enable the debtor to make some payment on her student

loan without reducing what the debtor and her dependents need to maintain a minimal standard of

living." *In re Andresen,* 232 B.R. 127, 139 (B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-

55.

The "totality of the circumstances" is obviously a very broad test, giving the Court considerable

flexibility. As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances

to assisting them in making this determination including: (1) total present and future incapacity to pay

debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith

effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term;

(4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-

term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the

study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses;

(8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9)

the ratio of student loan debt to total indebtedness. *Vermaas v. Student Loans of North Dakota (In*

*re Vermaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R.

910, 914 (Bankr. W.D. Ark. 2002). Applying the totality of the circumstances test to the instant case,

4

the Court examines each factor separately.

### B.  Analysis of the Totality of the Circumstances

#### 1.  Past, Present and Reasonably Reliable Future Financial Resources

The first factor the Court must consider is Debtor's past, present and reasonably reliable future

financial resources.   As to income, there is no dispute that the base amount of his net monthly income

from employment is $2,333.45, as shown on his Schedule I.  Debtor testified that he has in the past

several years received income tax refunds in the amounts of $927.23, $712.00, $599.00 and

$1,100.00.  Because he has consistently received income tax refunds, it is appropriate to assume that

he will receive them in the future.  The Court cannot predict the amount of future tax refunds, but can

estimate them based upon previous experience.  Based on the numbers shown from the previous years'

tax returns, the average yearly tax refund was $834.55, which translates to an additional monthly

income of $69.55.

In addition, Debtor testified that his department participates in a program that makes it possible

for employees to receive an incentive bonus in an amount up to $4,000.00, if certain conditions are

met.  In the year 2005, Debtor did in fact receive such a bonus in the lump sum amount of $3,500.00.

In previous years, while Debtor has received a bonus, it has been a significantly smaller sum ranging

from $300 to $500.  While Debtor is not assured of receiving such a bonus in future years, since he has

received this bonus in previous years, the Court should include it in the estimate of his income.  In order

to do that, the Court will take an average of the amount of the bonuses received in the last four years,

using a $400.00 average figure for each of the previous three years and $3,500.00 from the year 2005.

The total amount is $4,700.00 and the average yearly bonus amount is $1,175.00, which translates to

5

additional average monthly income of $97.92. His total estimated future monthly income is thus

approximately $2,500.45.

2. Reasonable Necessary Living Expenses

The second factor the Court must look at is Debtor's reasonable living expenses. On the

expense side, Schedule J shows total monthly expenses of $2,189.00. None of these expenses

appears to be extravagant. Defendant is really not taking issue with any one of them in particular, but

urges the Court to compare certain expense items with the Internal Revenue Service Financial and

Collection Standards utilized by IRS agents to assess the ability of delinquent taxpayers to make

payments to satisfy their tax debts. These are the same standards Congress recently adopted for use in

certain contexts in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("Act").

Defendant points out that the guidelines for allowable living expenses for a one person household with a

gross monthly income in the range of Debtor's for the categories including food, housekeeping supplies,

apparel and services, personal care products and services and miscellaneous, would be $577.00.

According to Defendant's calculations, the debtor's monthly expenses for these categories according to

his Schedule J total $945.00 a month. Debtor would thus have an additional $368.00 per month if he

limited his expenses as suggested by the IRS standards.

For several reasons, however; the Court will not consider itself bound by the amounts shown in

the IRS standards applicable to Debtor. First, it is not clear to the Court that Congress intended that

the courts be bound by those standards in assessing whether repayment of student loan debt would

constitute an undue hardship. Congress had the opportunity to indicate that if that was its intent in

making the amendments to the Bankruptcy Code embodied in the Act. For example, in amended

6

§ 707(b) Congress specifically mandated that the courts utilize the IRS National Standards, Local

Standards and standards for Other Necessary Expenses to determine a debtor's appropriate expenses

in assessing whether the debtor has sufficient disposable income that the filing of a Chapter 7

proceeding would constitute an abuse. 11 U.S.C. § 707(b)(2)(A)(ii).  In addition, Congress mandated

that those same standards be utilized in assessing the disposable income of Chapter 13 debtors whose

income is above the applicable median.  11 U.S.C. § 1325(b)(3).  The Act also includes an

amendment to paragraph (8) of § 523(a), the governing provision here, which expands the types of

indebtedness subject to the requirement that discharge may only be obtained upon a showing of undue

hardship.  11 U.S.C. § 523(a)(8)(B).  Therefore, while Congress specifically required the courts to

utilize the IRS standards in certain places and did make amendments to § 523(a)(8), it did not purport

to require the courts to be bound by those standards in making the undue hardship determination.

Accordingly, the Court does not consider itself bound by such standards in this context.

Secondly, neither of the cases cited by Defendant, *Educational Credit Management

Corporation v. Howe (In re Howe)*, 319 B.R. 886 (B.A.P. 9th Cir. 2005) and *Ivory v. United

States of America (In re Ivory)*, 269 B.R. 890 (Bankr. N.D. Ala.) hold that the Court should be

bound by these standards.  As a matter of fact, the Bankruptcy Appellate Panel in *Howe*, specifically

reversed a bankruptcy court for making the undue hardship determination while relying solely upon the

IRS standards.  The court held that the bankruptcy court should conduct its own individualized analysis

of the debtor's financial circumstances and not rely entirely upon those standards.  *Howe*, 319 B.R. at

890.  Neither does the court in *Ivory* suggest that bankruptcy courts should blindly apply the IRS

standards in assessing the undue hardship determination.  In that instance, the court applied several

7

recognized objective expense measures, including the IRS standards, and conducted its own

individualized and subjective assessment of the debtor's expenses. *Ivory*, 269 B.R. at 899-902.

Finally, and most significantly, while Defendant cites those instances in which Debtor's

expenses exceed those which would be allowed him by the IRS standards, it neglects to mention those

areas in which Debtor's expenses are below the level at which he would be authorized to spend

pursuant to those standards. The evidence demonstrates that when all the applicable expense

categories are considered, Debtor's actual expenses are lower than those which would be allowed by

the standards. Accordingly, rather than requiring that an adjustment be made reducing Debtor's actual

expenses to some lower presumed reasonable level, the comparison demonstrates the reasonableness

of Debtor's actual monthly expenses. The applicable IRS guidelines would permit Debtor to expend

the sum of $956.00 for housing, $251.00 for transportation, relating to vehicle operating costs, and

$577.00 for food, clothing and personal care items. The total amount of the guideline expenditures in

these areas is $1,784.00. Debtor's actual expenses are $726.00 for housing ($230.00 less than the

guideline), $200.00 for transportation ($51.00 less than the guideline), and $940.00 for food, clothing

and personal care items, for a total actual expenditure of $1,871.00, $87.00 more than the IRS

guidelines. In addition, however, Debtor testified that he believes it will be necessary, in the immediate

future to replace his 1993 Honda Civic with 210,000 miles and has budgeted a sum of $300.00 per

month for that purpose. The IRS standards have a separate component for ownership costs, pursuant

to which Debtor would be authorized to spend as much as $475.00 per month. Accordingly, Debtor's

budgeted expense for the cost of ownership of a vehicle are $175.00 less than the IRS guidelines.

Consequently, Debtor's total expenditures in all these categories are less than those which would be

authorized by the IRS guidelines.

Defendant quibbles with certain personal care expenditure items in the debtor's budget such as a $55.00 gym fee for the swimming exercises he does, $105.00 for health supplements and vitamins and $40.00 a month for yoga exercises. Debtor testified that all of these things had been of help to him in managing the pain of his arthritic condition and enabling him to function. While these are not necessarily amounts that would be specifically authorized by the IRS standards and inclusion of these items may cause the debtor to exceed the IRS limit in the personal care category, Debtor has simply chosen to live more frugally in certain other areas and to allocate some of the expenditures which might otherwise be authorized to the purchase of these items and services. The Court is not willing to hold that that decision is unreasonable.

### 3. Other Relevant Facts and Unique Circumstances

In the category of other circumstances, the Court must evaluate the evidence presented with regard to Debtor's medical condition. Debtor is not employed in the area for which his advance degree prepared him. His testimony, however, essentially uncontradicted, was that his arthritic condition made that impossible. There is no testimony to indicate that that situation has changed. The Court is not convinced that Debtor's medical condition, however, prevents him from being employed in the capacity in which he is now employed and from continuing to earn a similar level of income. Debtor testified that he has, despite his condition, not missed any days of work in the calendar year 2005. While the rather cryptic letter from one of his physicians says that his condition can be "sometimes disabling," the exhibit

offers no other description or indication of the meaning of that comment.[5]  Accordingly, there is no

evidence that Debtor cannot continue to remain employed in his current capacity and to earn a similar

level of income in future years.  However, as the Court has indicated above, that level of income, even

when supplemented by occasional tax refunds and incentive bonuses will not permit Debtor to pay his

reasonable expenses and the minimum payment required by the Income Contingent Repayment Plan.

        For all of the above reasons, the Court finds that repayment of the indebtedness owed by

debtor Robin Timothy Albee to defendant U.S. Department of Education would be an undue hardship

and is hereby discharged pursuant to 11 U.S.C. § 523(a)(8).

        A separate Order will be entered in accordance with Bankruptcy Rule 9021.


Dated: <u>February 13, 2006</u>                 <u>/s/ Dennis R. Dow</u>

                                                THE HONORABLE DENNIS R. DOW
                                                UNITED STATES BANKRUPTCY JUDGE

Copies to:
Janice A. Harder
E. Eugene Harrison

---

[5]Plaintiff's Ex. 6.